J-S32009-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SCOTT LEE SARGENT | : | |
| | : | |
| Appellant | : | No. 506 MDA 2021 |

Appeal from the Judgment of Sentence Entered February 1, 2018
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s):  CP-40-CR-0000228-2016

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and LAZARUS, J.

MEMORANDUM BY PANELLA, P.J.:　　　　　**FILED: DECEMBER 23, 2022**

Scott Lee Sargent engaged in a shooting rampage outside of a Walmart store that quickly turned into a police standoff. He now brings a second *nunc pro tunc* direct appeal and asks us to review evidentiary determinations made by the trial court and to consider the legality of his sentence. We affirm.

On October 17, 2015, after having visited a local casino, Sargent and his girlfriend went to a Walmart in Wilkes-Barre Township, Pennsylvania. Sargent stayed in the parking lot while his girlfriend went into the store. Believing that he was being followed by two individuals, Sargent used an AR-15 rifle to open fire into the garage doors at the rear of the store. Police responded to the scene, and Sargent opened fire in the direction of the officers. During a fifteen-minute standoff, Sargent continued to shoot at the various officers as they took positions around the area. When Sargent tried to

flee the area, he continued to shoot at the police as they followed him. Sargent was ultimately subdued when he was shot in the abdomen.

Sargent was charged with multiple counts of attempted murder and related crimes. On October 16, 2017, a jury convicted Sargent of five counts of attempted murder of a law enforcement officer, six counts of assault of a law enforcement officer, one count of aggravated assault, nine counts of recklessly endangering another person ("REAP"), and one count of harassment.[1] On December 14, 2017, the trial court sentenced Sargent to serve an aggregate term of incarceration of 179 to 358 years, with an additional 90 days, to be served consecutively. Sargent failed to take a direct appeal. Nevertheless, he filed a petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, and the PCRA court reinstated his direct appeal rights. However, in his *nunc pro tunc* direct appeal, Sargent only raised claims of ineffective assistance of trial counsel. Because such issues must await collateral review, this Court affirmed Sargent's judgment of sentence without prejudice to raise the ineffective assistance claims in a timely PCRA petition. **Commonwealth v. Sargent**, 1989 MDA 2018, 226 A.3d 629 (Pa. Super. filed January 13, 2020) (unpublished memorandum).

On July 24, 2020, Sargent filed a *pro se* PCRA petition, and appointed counsel filed an amended petition seeking permission to file post-sentence

---

[1] 18 Pa.C.S.A. §§ 901(a), 2507(a), 2702.1(a), 2702(a)(1), 2705, 2709(a)(1).

motions *nunc pro tunc* and a direct appeal *nunc pro tunc*. On April 14, 2021, the PCRA court granted Sargent's request to file a direct appeal but denied his request to file post-sentence motions. This appeal followed in which Sargent raises multiple issues pertaining to the exclusion of evidence, as well as issues relating the legality of his sentence.

Sargent first argues that the trial court improperly precluded him from cross-examining Officer Mitchell Rennick about the officer's familiarity with the effects of crystal meth on an individual's judgment and perception. **See** Appellant's Brief at 11-12. Specifically, Sargent claims "[t]he testimony which was attempted to be [elicited] dealt with understanding the effect of drugs and alcohol on [Sargent's] actions. Because intent is a fact at issue, the answers could help the jury in its determination of [Sargent's] intent at the time of the incident." **Id**. at 12.

"[Q]uestions concerning the admissibility of evidence are committed to the sound discretion of the trial judge, whose rulings will not be disturbed on appeal absent an abuse of that discretion." **Commonwealth v. Reed**, 990 A.2d 1158, 1167-68 (Pa. 2010) (citation omitted). The basic requisite for the admissibility of any evidence in a case is that it be competent and relevant. **See Commonwealth v. Freidl**, 834 A.2d 638, 641 (Pa. Super. 2003).

One of a trial judge's broad powers is controlling the scope of the examination of witnesses. We are mindful that

> [o]n cross-examination, an attorney is entitled to question the witness about subjects raised during direct examination as well as

any facts tending to refute inferences arising from matters raised during direct testimony. Similarly, an attorney may discredit a witness by cross-examining the witness about omissions or acts that are inconsistent with his testimony. However, the scope and limits of cross-examination is [sic] vested in the trial court's discretion and that discretion will not be reversed unless the trial court has clearly abused its discretion or made an error of law.

*Commonwealth v. Ogrod*, 839 A.2d 294, 322 (Pa. 2003).

Here, the trial court prevented Sargent from cross-examining Officer Rennick about Sargent's use of crystal meth prior to the rampage. Generally, "[n]either voluntary intoxication nor voluntary drugged condition is a defense to a criminal charge." 18 Pa.C.S.A. § 308.

However, evidence of voluntary intoxication "may be offered by the defendant whenever it is relevant to reduce murder from a higher degree to a lower degree of murder." *Id.* Our Supreme Court has long stated that "[e]vidence of substantial intoxication ... [, i]f believed, [] may negate the intent to kill necessary for a conviction of murder in the first degree, and a defendant is entitled to an instruction to that effect." *Commonwealth v. Rose*, 344 A.2d 824, 826 (Pa. 1975) (citation omitted). Nonetheless, § 308 acts to exclude evidence of voluntary intoxication to a charge of attempted homicide. *See Commonwealth v. Williams*, 730 A.2d 507, 511 (Pa. Super. 1999).

As the trial court here correctly stated, "defense counsel acknowledged on the record that voluntary intoxication was not a defense at issue[.]" Trial Court Opinion, 12/29/21, at 8 (citing N.T., 10/16/17, at 393-394, 398-401).

- 4 -

"[A]ny evidence that [Sargent] was voluntarily intoxicated or drugged was not relevant to the issue of intent." *Id*. Likewise, "Officer Rennick's familiarity with the effects of crystal meth on a person's judgment and perception, or [the officer's] dealings with people under the influence [was not relevant]." *Id*. We agree with this assessment by the trial court. Because voluntary intoxication was not a defense to the crimes charged against Sargent, any such evidence lacks relevance. Accordingly, the trial court did not abuse its discretion in limiting the cross-examination of Officer Rennick and precluding testimony pertaining to the officer's knowledge of the effects of particular drugs.

In a similar vein, Sargent's issues 2, 3, 4, and 5,[2] raise challenges to the trial court's rulings that precluded him from offering testimony about his voluntary intoxication at the time of the rampage. *See* Appellant's Brief at 12-16. The underlying theory in each of these issues is that evidence of Sargent's impaired condition should have been permitted to negate any element of specific intent to shoot at the officers.

_____

[2] Issue 2 pertains to the trial court precluding testimony concerning Sargent's condition at the time of the incident. Issue 3 addresses the trial court sustaining the Commonwealth's objection to Sargent's testimony about his drug use on the day of the incident. Issue 4 concerns the trial court sustaining the Commonwealth's objection to Sargent's attempt to testify that he was under the influence of alcohol on the day of the incident. Issue 5 returns to the claim that Sargent was improperly precluded from offering testimony regarding his intoxicated state, which would have negated the element of intent.

As set forth above, neither evidence of voluntary intoxication nor voluntary drugged condition may be introduced to negate the element of intent of an offense. **See** 18 Pa.C.S.A. 308. As we explained in **Williams**, "[Section] 308 clearly dictates the only legal significance of the voluntary consumption of alcohol is when it 'is relevant to reduce murder from a higher degree to a lower degree of murder.' In an attempted murder case the lowering of the degree is logically impossible. There simply is no such crime as attempted second or third degree murder." **Williams**, 730 A.2d at 511 (citation omitted).

We have reviewed the briefs of the parties, the pertinent legal authority, the certified record, and the trial court's thorough opinion. We agree with the trial court that it did not abuse its discretion in declining to permit testimony concerning the extent of Sargent's allegedly impaired condition from either alcohol or drugs. Sargent has cited no legal authority to support his theory that the element of intent necessary for attempted murder convictions is negated by voluntary impairment. Therefore, we agree with the trial court that these issues lack merit, adopt the reasoning set forth by the trial court in its written opinion and affirm on its basis. **See** Trial Court Opinion, 12/29/21, at 16-19.

In his final two issues, Sargent argues that his sentence is illegal. **See** Appellant's Brief at 16-17. In each issue, Sargent asserts that various convictions should have merged for the purpose of sentencing.

A claim that the trial court imposed an illegal sentence by failing to merge sentences is a question of law. *See Commonwealth v. Duffy*, 832 A.2d 1132, 1137 (Pa. Super. 2003). Accordingly, our standard of review is plenary. *Id*.

Our legislature has addressed the mandatory merger of crimes for the purpose of sentencing in section 9765 of the sentencing code, which provides as follows:

> **§ 9765. Merger of sentences**
>
> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765. Concerning the appropriate test for merger of crimes for sentencing, "[t]he statute's mandate is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." *Commonwealth v. Baldwin*, 985 A.2d 830, 833 (Pa. 2009). However, "there is no merger if each offense requires proof of an element the other does not." *Commonwealth v. Quintua*, 56 A.3d 399, 401 (Pa. Super. 2012) (citations omitted).

In issue 6, Sargent claims that, for sentencing purposes, his convictions of assault of a law enforcement officer should have merged with his

convictions of attempt to commit murder of a law enforcement officer.[3] *See*
Appellant's Brief at 16-17. Sargent alleges the two sets of crimes dealt with a
single criminal act. *See id*. at 17. He further posits that "[b]ecause the
attempted murder of a law enforcement officer and assault of a law
enforcement officer both have the element in the offense of being committed
upon a police officer, aggravated assault would be a lesser included offense of
attempted murder of a police officer." *Id*. (citation omitted). We disagree with
Sargent's argument.

"When considering whether there is a single criminal act or multiple
criminal acts, the question is not whether there was a break in the chain of
criminal activity[, but] … whether the actor commits multiple criminal acts
beyond that which is necessary to establish the bare elements of the additional
crime[.]" *Commonwealth v. Petterson*, 49 A.3d 903, 912 (Pa. Super.
2012). Sargent is not entitled to a "volume discount" on his crimes "simply
because he managed to accomplish all the acts within a relatively short period
of time." *Id.*

As the record reflects, Sargent's crimes did not arise from a single
criminal act. Our review indicates Sargent fired multiple times upon the five

_____

[3] Although not detailed by Sargent in his brief, this argument involves five
convictions of attempted murder of a law enforcement officer, Counts 1
through 5, and five convictions of assault of a law enforcement officer, Counts
6 through 8, and 10 and 11. *See* Information, 3/29/16, at 1-2. The crimes
were committed against Officers Jude Allen, Dana Pulchaski, Brian Bouton,
Alan Gribble, and Joseph Sinavage. *See id*.

different police officers during the entire course of this incident.[4] As the trial court cogently concluded, "Because [Sargent] fired on each officer more than once during the course of the standoff, the crimes did not arise from a single criminal act[.]" Trial Court Opinion, 12/29/21, at 25.

We agree with the trial court's determination and likewise conclude that merger of the convictions of assault of a law enforcement officer and attempt to commit murder of a law enforcement officer is not appropriate because the crimes did not arise from a single criminal act. Although the incident on the day in question, *i.e.*, the random shooting of a Walmart store followed by a standoff with the responding police officers, may be characterized as a single criminal episode, the event was comprised of multiple criminal acts as Sargent shot at the five police officers as he and the officers moved about the area. Consequently, Sargent has not met the first part of the merger test.

Moreover, regarding the second part of the test, we conclude that all of the statutory elements of assault of a law enforcement officer, 18 Pa.C.S.A. § 2702.1(a), are not included in the statutory elements of attempted murder of a law enforcement officer, 18 Pa.C.S.A. §§ 901 and 2507(a).

---

[4] For a detailed account of the testimony describing the events of the incident as they pertain to each of the five officers, we direct the reader to the trial court's opinion, which sets forth the narrative of the incident and explains that Sargent was committing multiple criminal acts against each of the officers during the criminal episode. **See** Trial Court Opinion, 12/29/22, at 22-25.

Notably, the crime of assault of a law enforcement officer requires the Commonwealth to prove that the defendant discharged a firearm. ***See*** 18 Pa.C.S.A. § 2702.1(a). Attempted murder of a law enforcement officers is defined by reading the attempt statute, 18 Pa.C.S.A. § 901(a), in conjunction with the murder of a law enforcement officer statute, 18 Pa.C.S.A. § 2502(a) (murder of a law enforcement officer of the first degree). Accordingly, the elements of attempted murder of a law enforcement officer are (1) the taking of a substantial step, (2) towards an intentional killing of a law enforcement officer while in the performance of duty knowing the victim is a law enforcement officer. ***See*** 18 Pa.C.S.A. §§ 901(a), 2507(a). Therefore, review of the elements of the two crimes reveals at least one element in each that is not present in the other. Specifically, assault of a law enforcement officer requires the discharge of a firearm. Criminal attempt to murder a law enforcement officer requires a specific intent to kill. Because the two crimes each have an additional element not included in the other offense, they do not merge for sentencing purposes. Therefore, Sargent fails to meet the second part of the merger test.

In his final issue, Sargent argues that, for sentencing purposes, his multiple convictions of REAP merge with his convictions of attempted murder of a law enforcement officer, assault of a law enforcement officer, and aggravated assault. ***See*** Appellant's Brief at 17. After careful review, we conclude this claim lacks merit.

Again, merger is only appropriate when "two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." **Baldwin**, 985 A.2d at 833. Concerning the second prong, merger is not applied "if each offense requires proof of an element the other does not." **Quintua**, 56 A.3d at 401 (citation omitted).

We first consider whether five of Sargent's convictions of REAP, which were committed against police officers at the scene, merge with the five convictions of attempted murder of a law enforcement officer that were committed against the same officers.[5]

As discussed above, these crimes arose from individual criminal acts that Sargent committed during the course of a criminal episode. For this reason, merger is not appropriate because Sargent has not met the first part of the merger test. Nevertheless, assuming for the sake of argument that Sargent met the first prong of the merger test, we conclude that the second part of the test has not been met.

The crime of REAP is satisfied where a defendant "recklessly engages in conduct which places or may place another person in danger of death or

_____

[5] This argument involves the five convictions of attempted murder of a law enforcement officer, Counts 1 through 5, and five convictions of REAP, Counts 15 through 18, and 23. **See** Information, 3/29/16, at 1, 3-4. Again, both sets of crimes were committed against Officers Allen, Pulchaski, Bouton, Gribble, and Sinavage. **See id**.

- 11 -

serious bodily injury." 18 Pa.C.S.A. § 2705. Again, the elements of attempted murder of a law enforcement officer are (1) the taking of a substantial step, (2) towards an intentional killing of a law enforcement officer while in the performance of duty knowing the victim is a law enforcement officer. ***See*** 18 Pa.C.S.A. §§ 901(a), 2507(a).

A close analysis of the statutory language in the two offenses indicates that they differ in pertinent respects. REAP requires reckless conduct that places a person in danger of death or serious bodily injury. However, the convictions of attempted murder of a law enforcement officer require steps towards an intentional killing of an officer while on duty. Accordingly, a person could recklessly place another in danger of death without attempting to murder a police officer. Conversely, a person could take steps toward intentionally killing an officer without placing them in danger of death. Consequently, we do not agree with Sargent that the elements of these offenses are the same and thus subsumed within each other for purposes of sentencing. Therefore, Sargent's claim of merger with regard to the convictions of REAP and attempted murder of a law enforcement officer fails.

We next consider whether six of Sargent's convictions of REAP, which were committed against the police officers, merge with the six convictions of assault of a law enforcement officer committed against those same officers.[6]

Again, these crimes arose from individual criminal acts that Sargent committed during his rampage. Therefore, merger is not applied because Sargent has not met the first part of the merger test. Regardless, assuming for the sake of argument that Sargent met the first prong of the merger test, we conclude that the second part of the test has not been met.

Again, REAP is satisfied where a defendant "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. However, the crime of assault of a law enforcement officer requires the Commonwealth to prove that the defendant discharged a firearm while attempting to cause or intentionally or knowingly causing bodily injury. *See* 18 Pa.C.S.A. § 2702.1(a).

As the trial court aptly stated, "A person could recklessly engage in conduct, without using a firearm, which placed or may have placed a civilian in danger of death or serious bodily injury, thereby committing REAP but not assault of a law enforcement officer. Conversely, a person could cause bodily

---

[6] This claim involves the six convictions of assault of a law enforcement officer, Counts 6 through 9, 10, and 11, and six convictions of REAP, Counts 15 through 18, 21, and 23. *See* Information, 3/29/16, at 1-2, 3-4. Both sets of crimes were committed against Officers Allen, Pulchaski, Bouton, Gribble, Sinavage, and Rennick. *See id*.

injury, but not serious bodily injury or death, to a law enforcement officer by discharging a weapon, thereby committing assault of [a] law enforcement officer but not REAP." Trial Court Opinion 12/29/21, at 30-31. We agree with this assessment of the elements of the two crimes and conclude Sargent's claim that the crimes merge for sentencing purposes lacks merit.

We last consider whether two of Sargent's convictions of REAP merge with two convictions of aggravated assault.[7] A conviction of aggravated assault requires the Commonwealth to prove that Sargent "attempt[ed] to cause serious bodily injury to another, or caus[ed] such injury intentionally, knowingly, or recklessly …." 18 Pa.C.S.A. § 2702(a)(1). Again, REAP requires proof that another person was placed in danger of death or serious bodily injury. 18 Pa.C.S.A. § 2705. We have held that aggravated assault and REAP do not merge for purposes of sentencing because "each offense requires proof of an element that is absent from the other offense, and one offense can be committed without committing the other offense." *Commonwealth v. Cianci*, 130 A.3d 780, 783 (Pa. Super. 2015) (holding that aggravated assault conviction under section 2702(a)(1), requiring that a defendant attempts to cause or intentionally, knowingly, or recklessly causes serious bodily injury to another, does not merge with REAP conviction because an individual could

---

[7] This issue involves two convictions of aggravated assault, Counts 12 and 13, and two convictions of REAP, Counts 19 and 20. *See* Information, 3/29/16, at 2-3. Both sets of crimes were committed against Walmart employees Zachary McNeil and Edward Vasquez. *See id*.

attempt to cause bodily injury without placing a person in actual danger, and likewise, could create an actual danger without attempting or intending to cause bodily injury). Therefore, because all of the elements of REAP are not included in the elements of aggravated assault, this claim lacks merit.

Judgment of sentence affirmed.


Judgment Entered.



Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/23/2022

## 11TH JUDICIAL DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA     :    IN THE COURT OF COMMON PLEAS
                                                :       OF LUZERNE COUNTY
                                                  :

               v.                               :

                                                 :       <u>CRIMINAL DIVISION</u>
                                                  :

SCOTT LEE SARGENT                       :
             Defendant / Appellant     :        NO.  228 OF 2016
                                                   :

---

## **O R D E R**

**AND NOW**, this 29th day of December 2021, upon review of the record in the above-captioned case, IT IS HEREBY DIRECTED that the attached Opinion is entered pursuant to Pa.R.A.P. 1925(a) in response to the Defendant's Concise Statement of Errors Complained of on Appeal.

The Clerk of Courts of Luzerne County is hereby ORDERED and DIRECTED to transmit the entire record in this case to the Superior Court of Pennsylvania, and shall serve a copy of this Order and Opinion on all counsel of record pursuant to Pa.R.Crim.P. 114.

BY THE COURT:

_____
DAVID W. LUPAS, J.

Copies:

District Attorney Samuel Sanguedolce
Kent D. Watkins, Esquire



# 11TH JUDICIAL DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA    :   IN THE COURT OF COMMON PLEAS
    :   OF LUZERNE COUNTY
    :
            v.    :
    :   CRIMINAL DIVISION
    :
SCOTT LEE SARGENT    :
        Defendant / Appellant    :   NO.  228 OF 2016
    :

---

## OPINION

BY:   THE HONORABLE DAVID W. LUPAS

## I.   FACTS AND PROCEDURAL HISTORY:

On March 29, 2016, the Luzerne County District Attorney filed a twenty-five (25) count Criminal Information against the above named Defendant, stemming from events transpiring on October 17, 2015.  On that date, police were dispatched to the Wilkes-Barre Township Walmart, following a 911 call reporting an active shooter outside the building.  When officers arrived, they found a man later identified as the Defendant in the rear parking lot area carrying a scoped AR-15 style assault rifle.  Over the course of the ensuing minutes, the Defendant fired multiple rounds at the responding officers, shooting at them as they initially arrived on the scene and took up positions to assess the reported threat, again discharging his weapon at them as they began to approached his position, and then firing at them when they pursued him as he changed positions.[1]

---

[1] In all, eleven victims were named in the Information, many of whom were the subject of more than one count.  Specifically, the Information charged the Defendant as follows - As to **Officer Jude Allen**: attempted murder of a law enforcement officer (18 Pa.C.S.A. § 901(a), 18 Pa. C.S.A. § 2507(a)), assault of a law enforcement officer (18 Pa.C.S.A. § 2702.1(a)), and recklessly endangering another person (REAP) (18 Pa.C.S.A. § 2705) (Counts 1, 11, 18); as to **Officer**

1

Represented by Attorneys Joseph Yeager and Melissa Sulima, of the Luzerne County Public Defenders Office, the Defendant pleaded not guilty to the charges against him and a jury trial commenced on October 16, 2017. In opening argument, defense counsel explained to the jury that the Defendant believed that he was being followed by unknown persons, and that he fired in self-defense against those persons, not realizing that they were police officers. N.T. 10/16/2017 at 48-49.[2] Defense counsel acknowledged that the Defendant acted recklessly, but insisted that he lacked the specific intent to kill or inflict serious bodily injury upon the police officers. _Id_. at 49-50. During the trial, the Commonwealth presented the testimony of fifteen witnesses, including ten police officers, two Walmart employees, a 911 operator, and a paramedic. The Defendant testified on his own behalf in support of the claims made during opening argument.

On October 20, 2017, the jury found the Defendant guilty of Counts 1-12 and 15-23, and not guilty of Counts 13 and 24.[3] In addition, this Court found the Defendant guilty of Count 25,

---

**Dana Puchalski**: attempted murder of a law enforcement officer, _supra_, assault of a law enforcement officer, _supra_, and REAP, _supra_ (Counts 2, 7, 16); as to **Officer Brian Bouton**: attempted murder of a law enforcement officer, _supra_, assault of a law enforcement officer, _supra_, and REAP, _supra_ (Counts 3, 10, 15); as to **Officer Alan Gribble**: attempted murder of a law enforcement officer, _supra_, assault of a law enforcement officer, _supra_, and REAP, _supra_ (Counts 4, 8, 17); as to **Officer Joseph Sinavage**: attempted murder of a law enforcement officer, _supra_, assault of a law enforcement officer, _supra_, and REAP, _supra_ (Counts 5, 6, 23); as to **Officer Mitchell Rennick**: assault of a law enforcement officer, _supra_, and REAP, _supra_, (Counts 9, 21); as to **Zachary McNeil**, a Walmart employee: aggravated assault (18 Pa.C.S.A. § 2702(a)(1)) and REAP, _supra_, (Counts 12, 19); as to **Edward Vasquez**, a Walmart employee: aggravated assault, _supra_, and REAP, _supra_, (Counts 13, 20); as to **Officer Ken Jones**: REAP, _supra_ (Count 22); as to **Alonzo Randall**, a Walmart patron: REAP, _supra_ (Count 24); as to **Timothy Bella**, a paramedic: Harassment (18 Pa.C.S.A. 2709(a)(1) (Count 25). Additionally, the Information charged the Defendant with possession of a firearm prohibited, 18 Pa.C.S.A § 6105(a)(1) (Count 14).

[2] Although the trial spanned multiple days, the trial transcript is dated October 16, 2017 and is continuously paginated under that date.

[3] Count 14, possession of firearm prohibited, was initially severed from trial, then eventually withdrawn by the Commonwealth. N.T. 12/14/17 at 19.

a summary offense. A Pre-Sentence Investigation (PSI) was ordered to be completed by the Luzerne County Adult Probation and Parole Department, and a sentencing date was scheduled.

A sentencing hearing was conducted on December 14, 2017, at which time the Commonwealth presented the testimony of two witnesses. After review and consideration of the submissions of counsel, the testimony of the witnesses, and a review of the PSI, this Court sentenced the Defendant, and advised him of his post-sentence rights.[4]

---

[4] With regard to Counts 1, 11, and 18, charging the Defendant with attempted murder of a law enforcement officer, assault of a law enforcement officer, and REAP as to **Officer Jude Allen**, the Defendant was sentenced to ten (10) to twenty (20) years imprisonment at Count 1, twenty (20) to forty (40) years imprisonment at Count 11, to run consecutive to all prior sentences, and one (1) to (2) years imprisonment at Count 18, to run concurrent to all previously imposed sentences. N.T. 12/14/2017 at 14, 16.

With regard to Counts 2, 7 and 16, charging the Defendant with attempted murder of a law enforcement officer, assault of a law enforcement officer, and REAP as to **Officer Dana Puchalski**, the Defendant was sentenced to ten (10) to twenty (20) years imprisonment at Count 2, to run consecutive to all prior sentences, twenty (20) to forty (40) years imprisonment at Count 7, to run consecutive to all prior sentences, and one (1) to (2) years imprisonment at Count 16, to run concurrent to all previously imposed sentences. _Id_. at 14-15, 17.

With regard to Counts 3, 10, 15, charging the Defendant with attempted murder of a law enforcement officer, assault of a law enforcement officer, and REAP as to **Officer Brian Bouton**, the Defendant was sentenced to ten (10) to twenty (20) years imprisonment at Count 3, to run consecutive to all prior sentences, twenty (20) to forty (40) years imprisonment at Count 10, to run consecutive to all prior sentences, and one (1) to (2) years imprisonment at Count 17, to run consecutive to all previously imposed sentences. _Id_. at 14-15, 16, 17.

With regard to Counts 4, 8, 17, charging the Defendant with attempted murder of a law enforcement officer, assault of a law enforcement officer, and REAP as to **Officer Alan Gribble**, the Defendant was sentenced to ten (10) to twenty (20) years imprisonment at Count 4, to run consecutive to all prior sentences, twenty (20) to forty (40) years imprisonment at Count 8, to run consecutive to all prior sentences, and one (1) to (2) years imprisonment at Count 17, to run concurrent to all previously imposed sentences. _Id_. at 15, 16, 17.

With regard to Counts 5, 6, 23, charging the Defendant with attempted murder of a law enforcement officer, assault of a law enforcement officer, and REAP as to **Officer Joseph Sinavage**, the Defendant was sentenced to ten (10) to twenty (20) years imprisonment at Count 5, to run consecutive to all prior sentences, twenty (20) to forty (40) years imprisonment at Count 6, to run consecutive to all prior sentences, and one (1) to (2) years imprisonment at Count 23, to run concurrent to all previously imposed sentences. _Id_. at 15, 17-18.

With regard to Counts 9 and 21, charging the Defendant with assault of a law enforcement officer and REAP as to **Officer Mitchell Rennick**, the Defendant was sentenced to twenty (20) to forty (40) years imprisonment at Count 9, to run consecutive to all prior sentences,

3

No direct appeal of the Defendant's sentence was filed. On January 2, 2018, the Defendant filed a timely *pro se* Post Conviction Relief Act (PCRA) petition. Attorney Jeffrey Yelen was appointed as PCRA counsel, and a supplemental PCRA petition was filed on October 24, 2018. Following a November 7, 2018 PCRA hearing, the Defendant's direct appeal rights were reinstated by agreement of the parties, and the Defendant was permitted thirty (30) days in which to file a direct appeal. Through Attorney Yelen, Defendant filed a counseled timely Notice of Appeal on December 6, 2018.

Attorney Yelen was subsequently permitted to withdraw, and Attorney Matthew Kelly was appointed to represent the Defendant for purposes of the direct appeal. A Pa.R.A.P. 1925(b) Statement of Errors Complained was filed on January 9, 2019, raising allegations that trial counsel rendered ineffective assistance. On January 13, 2020, the Superior Court affirmed the Defendant's sentence without prejudice to his right to raise the ineffectiveness of counsel claims in a timely filed PCRA petition.

The Defendant subsequently filed a *pro se* PCRA petition on July 24, 2020. Attorney Leonard Gryskewicz was appointed to represent him, and a supplemental PCRA petition was

---

and one (1) to (2) years imprisonment at Count 21, to run concurrent to all previously imposed sentences. *Id.* at 16, 17.

With regard to Counts 12 and 19, charging the Defendant with aggravated assault and REAP as to **Zachary McNeil**, the Defendant was sentenced to seven (7) to fourteen (14) years imprisonment at Count 12, to run consecutive to all prior sentences, and one (1) to two (2) years imprisonment at Count 19, to run concurrent to all prior sentences. *Id.* at 16-17.

With regard to Count 20, charging the Defendant with REAP as to **Edward Vasquez**, the Defendant was sentenced to one (1) to two (2) years imprisonment, to run consecutive to all prior sentences. *Id.* at 17.

With regard to Count 22, charging the Defendant with REAP as to **Officer Ken Jones**, the Defendant was sentenced to one (1) to two (2) years imprisonment, to run consecutive to all prior sentences. *Id.*

With regard to Count 25, charging the Defendant with harassment as to **Timothy Bella**, the Defendant was sentenced to ninety (90) days imprisonment, to run consecutive to the previously imposed sentences. *Id.* at 18.

4

filed on November 10, 2020. Therein, the Defendant sought permission to file post-sentence motions *nunc pro tunc*, and to file a direct appeal *nunc pro tunc*.

On April 14, 2021, this Court granted the Defendant's request to file a direct appeal *nunc pro tunc*, but denied his request to file post-sentence motions *nunc pro tunc*. In response, Attorney Gryskewicz filed a single counseled notice of appeal on the Defendant's behalf, challenging both his December 14, 2017 judgment of sentence and the April 14, 2021 denial of his request to file post-sentence motions *nunc pro tunc*. Attorney Gryskewicz was subsequently permitted to withdraw his appearance, and Attorney Mary Deady was appointed to represent the Defendant. Attorney Deady requested, and was granted, additional time in which to file a Pennsylvania Rule 1925(b) Statement of Errors Complained of on Appeal. Before she did so, however, Attorney Kent Watkins entered his appearance on behalf of the Defendant. A Rule 1925(b) Statement was subsequently timely filed by Attorney Watkins on July 7, 2021.

## II.   LAW AND DISCUSSION:

The Defendant's Rule 1925(b) Statement raises eleven allegations of error. The Defendant first asserts that this Court "erred in sustaining the Commonwealth's objection to questions asked Officer Rennick as to whether he was familiar with the effects of crystal meth on a person's judgment and perception as well as the officer's dealing with people under the influence of illegal drugs and alcohol." Rule 1925(b) Statement filed 7/7/2021 at ¶ 1 (citing N.T. 10/16/2017 at 124).[5]

---

[5] Although the Defendant does not set forth the specific questions at issue, a review of the record reflects the following exchange occurred during Officer Rennick's cross-examination:

| MR. YEAGER: | During the course of your observation of Mr. Sargent, did you observe him drinking any type of alcohol or anything from a container by the vehicle |
|---|---|
| OFFICER RENNICK: | No, Sir. |

It is well settled that the scope of cross-examination is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion. *Commonwealth v. Hitcho*, 633 Pa. 51, 123 A.3d 731, 769 (2015). When a trial court determines the scope of cross-examination, it may consider whether the matter is collateral, the cross-examination would be likely to confuse or mislead the jury, and the cross-examination would waste time. *Commonwealth v. Brinton*, 275 Pa. Super. 304, 418 A.2d 734, 736 (1980).

*Commonwealth v. Largaespada*, 184 A.3d 1002, 1009 (Pa. Super. 2018). Further, "questions concerning the admissibility of evidence are committed to the sound discretion of the trial judge, whose rulings will not be disturbed on appeal absent an abuse of that discretion." *Commonwealth v. Scott*, 212 A.3d 1094, 1107 (Pa. Super. 2019), appeal denied, 222 A.3d 383 (2019). See also *Commonwealth v. O'Brien*, 836 A.2d 966, 968 (Pa. Super. 2003), appeal denied, 577 Pa. 695, 845 A.2d 817 (2004). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Commonwealth v. Johnson*, 615 Pa. 354, 372, 42 A.3d 1017, 1027 (2012) (citations and quotation marks omitted). See also *Commonwealth v. Handfield*, 34 A.3d 187, 207-08 (Pa. Super. 2011).

| MR. YEAGER: | Were you aware that when he was taken into custody there were empty baggies of crystal meth found on his person? |
| --- | --- |
| OFFICER RENNICK: | I was not aware of that. |
| MR. YEAGER: | Are you aware that crystal meth will affect one's judgment and perception? |
| MR. FITZPATRICK: | Objection, Your Honor. |
| THE COURT: | Sustained. |
| MR. YEAGER: | How long have you been an Officer? |
| OFFICER RENNICK: | 12 and a half years with Wilkes-Barre City. |
| MR. YEAGER: | Have you dealt with people who use illegal drugs? |
| MR. FITZPATRICK: | Objection, Your Honor. |
| THE COURT: | Sustained. |

N.T. 10/16/2017 at 123-124.

6

> In determining whether evidence should be admitted, the trial court must weigh the relevance and probative value of the evidence against the prejudicial impact of that evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact.

*Commonwealth v. Reid*, 571 Pa. 1, 34, 811 A.2d 530, 550 (2002) (citations omitted). See also Pa.R.E. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."). "Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact." *Reid*, 571 Pa. at 34, 811 A.2d at 550 (citation omitted). Further, the court may exclude relevant evidence "if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Here, the Court did not abuse its discretion in sustaining the Commonwealth's objections to the two questions at issue. Initially, we note that although the Defendant sought to convince the jury that he did not intend to kill or injure anyone, and did not know that he was firing on police officers, the evidence the objected-to questions sought to elicit was not relevant to this argument. Pursuant to the Pennsylvania Crimes Code:

> Neither voluntary intoxication nor voluntary drugged condition is a defense to a criminal charge, nor may evidence of such conditions be introduced to negative the element of intent of the offense, except that evidence of such intoxication or drugged condition of the defendant may be offered by the defendant whenever it is relevant to reduce murder from a higher degree to a lower degree of murder.

18 Pa.C.S.A. § 308. With regard to reducing the degree of murder, the Pennsylvania Supreme Court has explained that:

> A diminished capacity based on voluntary intoxication cannot be made out by mere evidence of intoxication, but rather requires evidence that demonstrates the defendant was intoxicated to such an extent he was unable to form the requisite

7

intent. "For a defendant who proves a diminished capacity defense, first-degree murder is mitigated to third-degree murder."

*Commonwealth v. Mason*, 634 Pa. 359, 408, 130 A.3d 601, 630 (2015) (citations omitted). Here, defense counsel acknowledged on the record that voluntary intoxication was not a defense at issue, and the Defendant clearly did not attempt to present evidence that he was intoxicated to such an extent that he was unable to form the requisite intent. N.T. 10/16/2017 at 393-394, 398-401. Thus any evidence that the Defendant was voluntarily intoxicated or drugged was not relevant to the issue of intent, and neither was Officer's Rennick's familiarity with the effects of crystal meth on a person's judgment and perception, or his dealings with people under the influence of drugs and alcohol. Further, Officer Rennick's answers to the questions at issue would not have resulted in answers which would logically tend to establish any *other* material fact in the case nor would his answers tend to support a reasonable inference regarding such a material fact. As such, this Court acted within its discretion in sustaining the Commonwealth's objections to these two questions, and the Defendant should not be granted appellate relief on this issue.[6]

---

[6] We also note that the Court's decision to sustain the objections was appropriate because the questions at issue were beyond the scope of direct examination. It is well established that cross examination "should be limited to the subject matter of the direct examination and matters affecting credibility," Pa.R.E. 611(b), and the scope of cross-examination is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion. *Largaespada*, 184 A.3d at 1009. See also *Commonwealth v. Lobel*, 440 A.2d 602, 605 (Pa. Super. 2009).

As the record reflects, Officer Rennick's testimony on direct examination did not address the subject of drugs or alcohol in any way. N.T. 10/16.2017 at 99-124. Further, Officer Rennick's testimony on cross-examination indicated that he had not observed the Defendant drinking any type of alcohol or anything from a container, and that he was not aware that when the Defendant was taken into custody there were empty baggies of crystal meth found on his person. *Id*. at 123-124. Nonetheless, defense counsel then asked Officer Rennick if he was aware that crystal meth had an effect on a user's judgment and perception. *Id*. at 124. Because Officer Rennick's testimony on direct examination and his answers to the questions previously asked him on cross-examination did not suggest that the Defendant had, in fact, used alcohol or

The Defendant next asserts that the Court "erred in sustaining the objection to the cross examination of Officer Allen concerning whether he had voluntarily left his prior employment or was asked to leave." Rule 1925(b) Statement filed 7/7/2021 at ¶ 2 (citing N.T. 10/16/2017 at 149-150).[7] As defense counsel explained to the Court at side-bar, although the defense sought to

---

crystal meth, this question was both beyond the scope of direct examination and non-responsive to the officer's previous answers on cross examination. The same can be said for the next question at issue, which inquired whether the officer had dealt with people who use illegal drugs. N.T. 10/16/2017 at 124.

[7] The record reflects that pertinent to the issue at hand, the following exchange occurred during the cross-examination of Officer Allen:

| | |
|---|---|
| MR. YEAGER: | Officer Allen, it's my understanding that October the 17th of 2015, you were employed on a part-time basis with Wilkes-Barre Township? |
| OFFICER ALLEN: | Yes, sir, that's correct. |
| MR. YEAGER: | And you had previously been employed on a part-time basis in other municipalities? |
| OFFICER ALLEN: | Yes, sir. |
| MR. YEAGER: | One of those being Sugarloaf? |
| OFFICER ALLEN: | Yes, sir. |
| MR. YEAGER: | And that particular municipality, did you leave that employment? Or were you asked to leave that employment? |
| MR. FERENTINO: | Objection, relevance. |
| THE COURT: | Sidebar. |

(The following discussion took place at sidebar:)

| | |
|---|---|
| MR. YEAGER: | Judge, they put on the record as to the fact that he was part time; that he had all this training, his education, his prior police experience. And I think we have a right to inquire as to whether or not that prior police experience, he was terminated or he freely left. I'm not going to get into the details of why he left. |
| MR. FERENTINO: | Personnel history has nothing -- |
| MS. SULIMA: | It goes to credibility. |
| MR. FERENTINO: | It really doesn't; but it has nothing to do with credibility. He just testified he worked -- his exit from a prior employment has nothing to do with October 17th, Judge. |
| MR. YEAGER: | Maybe how he handled the situation does. |
| THE COURT: | Well, I don't know what the answer to the question might be. I guess, what are you offering it for? |
| MR. YEAGER: | I'm not going to get into why he either left or was terminated. I just... |

9

elicit whether Officer Allen left his prior position voluntarily or was terminated, counsel specifically indicated to the Court that he was "not going to get into why he either left or was terminated." N.T. 10/16/2017 at 150.

As we noted above, the admission of evidence is committed to the sound discretion of the trial court, which the Superior Court reviews for an abuse of discretion. See *Scott*, *supra*; *O'Brien*, *supra*. See also *Commonwealth v. Murray*, 248 A.3d 557, 574 (Pa. Super. 2021). With regard to the use of testimony to impeach a police officer's credibility, the courts of this Commonwealth have permitted cross-examination about an officer's misconduct as long as the wrongdoing is in some way related to the defendant's underlying criminal charges and establishes a motive for the officer to fabricate, but if the misconduct is unrelated to the underlying criminal charges and irrelevant, the trial court is permitted to restrict questioning on the misconduct. *Murray*, *supra* (*citing Commonwealth v. Bozyk*, 987 A.2d 753, 757 (Pa. Super. 2009) (citations omitted)).[8]

---

| | |
|---|---|
| **MS. SULIMA:** | Was he terminated? |
| **MR. YEAGER:** | Did he leave voluntarily, or was he asked to leave. It's a very simple question. |
| **THE COURT:** | I don't think it's relevant, so I'll sustain the objection. |

(Sidebar discussion concluded.)

| | |
|---|---|
| **THE COURT:** | The objection is sustained. |

N.T. 10/16/2017 at 149-150.

[8] As the Superior Court in *Boyzk* explained:

> [I]f the prior police behavior is unrelated to the present matter and irrelevant, the trial court is permitted to restrict questioning on the prior incident. *Commonwealth v. Boczkowski*, 577 Pa. 421, 846 A.2d 75 (2004) (fact that police witness withheld evidence in prior case was not relevant because there was no evidence of withholding evidence in case at hand); *Commonwealth v. Bright*, 279 Pa. Super. 1, 420 A.2d 714 (1980) (defendant could not impeach police officer with potential disciplinary action for excessive use of force by different officer since that cross-examination had no relationship to case in question); see also *Commonwealth v. Guilford*, 861 A.2d 365, 369 (Pa. Super. 2004) (quoting *Bright*, *supra* at 716) ("a witness may not be contradicted on 'collateral' matters, ... and a collateral matter is one which has no relationship to the case at trial.").

10

Here, we properly sustained the Commonwealth's objection. As the record reflects, defense counsel clearly stated to the Court that if Officer Allen was permitted to testify whether or not he was terminated, counsel did not intend to ask Officer Allen the reason for the termination. N.T. 10/16/2017 at 150. Thus even if the objection had been overruled, the defense would not be able to show that the termination was in any way related to the Defendant's underlying criminal charges and established a motive for Officer Allen to fabricate. Simply put, evidence that Officer Allen was terminated (which was all the defense indicated it was seeking) would establish no nexus between the termination and the facts of the instant case, making such evidence irrelevant pursuant to Rule of Evidence 401, and rendering proper the Court's decision to grant the Commonwealth's objection to the question seeking to elicit the information. No appellate relief is due on this issue.

The third allegation of error contained in the Defendant's Rule 1925(b) Statement asserts that the Court "erred in sustaining an objection to cross examining Officer Allen concerning his testimony at the preliminary hearing." Rule 1925(b) Statement filed 7/7/2021 at ¶ 3 (citing N.T. 10/16/2017 at 165).[9] Again, the scope of cross-examination is a matter within the discretion of

---

*Bozyk*, 987 A.2d at 757.

[9] A review of the cited portion of the record reveals that the objection in question occurred after Officer Allen was asked on cross-examination about the number of shots he fired at the Defendant. The following exchange then occurred:

| | |
|---|---|
| MR. YEAGER: | Okay. And then you put a second clip in; correct? |
| OFFICER ALLEN: | Yes, sir. |
| MR. YEAGER: | Did you use any of the second clip? |
| OFFICER ALLEN: | No, sir |
| MR. YEAGER: | Okay. So at the point -- do you recall testifying at the preliminary hearing? |
| OFFICER ALLEN: | Yes, sir. |
| MR. YEAGER: | Okay. Do you recall indicating that you emptied two clips? |
| OFFICER ALLEN: | No, sir. |
| MR. YEAGER: | Okay. But if you did testify, you're saying that that was |

11

the trial court and will not be reversed absent an abuse of that discretion. *Largaespada*, 184 A.3d

at 1009. Here, the decision to sustain the Commonwealth's objections was not an abuse of

discretion. Officer Allen testified that he fired one magazine, and reloaded, but did not fire a

second magazine, and also testified that he did not recall testifying at the preliminary hearing that

|  |  |
|---|---|
|  | a mistake? |
| MR. FERENTINO: | Objection. He doesn't recall. |
| THE COURT: | Sustained. |
| MR. YEAGER: | But if you did, I'm saying that would have been a mistake? You're saying you only did one clip? |
| MR. FERENTINO: | Objection to the form, Judge. He's testified he used one clip. |
| MR. YEAGER: | But he doesn't recall what he said at the preliminary hearing. |
| THE COURT: | Sustained. |

N.T. 10/16/2017 at 165. Although the Defendant only objects to the above-cited rulings, the
cross examination of Officer Allen on the subject matter of the number of clips fired continued in
pertinent part as follows:

|  |  |
|---|---|
| MR. YEAGER: | You don't recall testifying at the preliminary hearing that you emptied two clips? |
| MR. FERENTINO: | Well, if you have a transcript of it, you can show it to him. |
| MR. YEAGER: | Do you have a transcript? |
| MR. FERENTINO: | No. |
| MR. YEAGER: | You could have gotten a steno. |
| MR. FERENTINO: | The proper way to ask that question is – |
| MR. YEAGER: | -- no, the proper way to ask the question is – |
| THE COURT: | All right. That's enough. Just move on and ask the question. |
| BY MR. YEAGER: | Officer, do you recall making a statement at the preliminary hearing that you emptied two clips? |
| OFFICER ALLEN: | No, sir. |
| MR. YEAGER: | Okay. The testimony today is one clip was emptied? |
| OFFICER ALLEN: | Yes, sir. So I fired one magazine, and then the second was reloaded. |
| MR. YEAGER: | And out of that second magazine, were any shots then fired from the second magazine? |
| OFFICER ALLEN: | No, sir. |

*Id.* at 166.

12

he fired the second magazine. Further examination of Officer Allen on the subject would have served no additional purpose.

Even if an error could be assigned to these rulings, such error is clearly harmless. As the Pennsylvania Supreme Court explained in *Commonwealth v. Noel*, 104 A.3d 1156 (Pa. 2014):

> The harmless error doctrine, as announced in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and adopted by this Court in *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978), reflects the reality that the accused is entitled to a fair trial, not a perfect trial. *Commonwealth v. Rasheed*, 536 Pa. 567, 570–71, 640 A.2d 896, 898 (1994); *Commonwealth v. Norris*, 498 Pa. 308, 316–17, 446 A.2d 246, 250 (1982). "[A]n error may be harmless where the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict." *Story*, 476 Pa. at 412–413, 383 A.2d at 166.

*Noel* 104 A.3d at 1172. In this case, any prejudice to the Defendant caused by this Court's sustaining an objection to questions pertaining to whether Officer Allen recalled previously testifying that he fired two clips, not one clip, is insignificant in comparison to the properly admitted evidence of the Defendant's guilt, and did not contribute to the verdicts rendered.

In his fourth allegation of error, the Defendant asserts that the Court erred in "failing to hold an *in camera* interview with juror number two who was alleged to have been sleeping for one-half an hour during the trial testimony." Rule 1925(b) Statement filed 7/7/2021 at ¶ 4 (citing N.T. 10/16/2017 at 176-177).[10] Despite the current assertion that an *in camera* interview should

---

[10] A review of the record reflects that the following exchange occurred pertinent to this allegation:

MS. SULIMA:      Judge, may we approach at sidebar briefly?

(The following discussion took place at sidebar:)

MS. SULIMA:      Judge, I apologize for raising a sidebar now, but I don't know where we're going to go with scheduling. I just wanted to let the Court know and everyone else, on the record, that Juror No. 2 has been sleeping for the last half hour.

13

have been conducted, a review of the trial transcript clearly shows that the defense never requested such an interview. As the Pennsylvania Rules of Appellate Procedure specify, issues that are not first raised in the trial court are waived on appeal. See Pa.R.A.P. 302(a); *Commonwealth v. Strunk*, 953 A.2d 577, 579 (Pa. Super. 2008). As the *Strunk* court held,

> [W]here a juror is allegedly sleeping or otherwise engaging in conduct that a party finds inappropriate, counsel must do more than simply ask that the record reflect as much in order to preserve a claim for appellate review. In order to preserve the issue for appeal, counsel must take the additional step of specifically requesting the trial judge to take action to remedy the situation. The decision of whether to seat an alternate, of course, is within the judge's discretion.

| | |
|---|---|
| THE COURT: | Juror No. 2? |
| MS. SULIMA: | She's been sleeping for the last half hour. |
| THE COURT: | I didn't observe it. I don't know... |
| MR. FERENTINO: | Nor did I, Your Honor. |
| MR. YEAGER: | Her head is down, but she... |
| MR. FERENTINO: | I did not observe that. I don't know if anyone else can see it. |
| MR. FITZPATRICK: | I didn't see anything. |
| MS. SULIMA: | Judge, I'm just letting you know. |
| THE COURT: | Okay. Well, I don't know whether that's true or not, but, hopefully, if someone were to see someone nodding off, I would hope you wouldn't wait a half hour before bringing it to the Court's attention. |
| MS. SULIMA: | It's been on and off. |
| THE COURT: | I don't know whether someone is sleeping; sometimes people put their heads down; sometimes people close their eyes and rest. I don't know if that means they're asleep or not asleep. I don't know if you want to just... |
| MR. FERENTINO: | She appears to have her head down but is awake at this point. |
| THE COURT: | For scheduling, obviously, I plan on just finishing this witness and we'll break for lunch. |
| MR. FERENTINO: | Okay. |
| (Sidebar discussion concluded.) | |
| THE COURT: | Just for the benefit of the jury, I know you've been sitting for a while. When we conclude with this witness, we'll be taking our luncheon recess, just so everyone is aware of that. Is everyone okay? All right. Commonwealth, if you have any redirect. |
| MR. FERENTINO: | I do, Your Honor. |

N.T. 10/16/2017 at 175-177. Following this exchange, redirect questioning occurred.

14

*Strunk*, 953 A.2d at 580. See also *Commonwealth v. English*, 667 A.2d 1123, 1126 (Pa. Super. 1995), affirmed, 548 Pa. 528, 699 A.2d 710 (1997) (Wherein the defendant waived any issue pertaining to alleged juror misconduct when he failed to request corrective measures).

Here, defense counsel brought to the Court's attention that she believed that Juror No. 2 had been sleeping, but counsel did not request an *in camera* interview of the juror. The failure to make that request precludes the Defendant from now achieving appellate relief on a claim that the Court erred in not conducting such an interview.

The Defendant's fifth issue on appeal asserts that the Court erred in ordering restitution without determining the defendant's ability to pay. Rule 1925(b) Statement filed 7/7/2021 at ¶ 5. A review of the record reflects that the Court imposed restitution as part of the Defendant's criminal sentence pursuant to Section 1106 of the Crimes Code, which provides:

> (a) General rule.--Upon conviction for any crime wherein:
> (1) property of a victim has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime; or
> (2) the victim, if an individual, suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.
> (b) Condition of probation or parole.--Whenever restitution has been ordered pursuant to subsection (a) and the offender has been placed on probation or parole, the offender's compliance with such order may be made a condition of such probation or parole.
> (c) Mandatory restitution.--
> (1) The court shall order full restitution:
> (i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss. The court shall not reduce a restitution award by any amount that the victim has received from the Crime Victim's Compensation Board or other government agency but shall order the defendant to pay any restitution ordered for loss previously compensated by the board to the Crime Victim's Compensation Fund or other designated account when the claim involves a government agency in addition to or in place of the board. The court shall not reduce a restitution award by any amount that the victim has received from an insurance company but shall order the defendant to

15

pay any restitution ordered for loss previously compensated by an insurance company to the insurance company.

...

(f) Noncompliance with restitution order.--Whenever the offender shall fail to make restitution as provided in the order of a judge, the probation section or other agent designated by the county commissioners of the county with the approval of the president judge to collect restitution shall notify the court within 20 days of such failure. Whenever the offender shall fail to make restitution within 20 days to a magisterial district judge, as ordered, the magisterial district judge shall declare the offender in contempt and forward the case to the court of common pleas. Upon such notice of failure to make restitution, or upon receipt of the contempt decision from a magisterial district judge, the court shall order a hearing to determine if the offender is in contempt of court or has violated his probation or parole.

18 Pa.C.S.A. § 1106. As the Superior Court has explained:

> In criminal proceedings, an order of restitution is not simply an award of damages, but is, rather, a sentence. _Commonwealth v. Holmes_, 155 A.3d 69 (Pa. Super. 2017). Section 1106 of the Crimes Code specifies that restitution is mandatory and the defendant's financial resources, i.e., his ability to pay, is irrelevant unless and until he defaults on the restitution order. _Commonwealth v. Colon_, 708 A.2d 1279, 1284 (Pa. Super. 1998); see also 18 Pa.C.S.A. § 1106. Accordingly, it bears repeating that this Court has no authority to disregard the plain language of the Sentencing Code. 1 Pa.C.S.A. § 1921; see also [_Commonwealth v. Hall_, 622 Pa. 396, 80 A.3d 1204, 1211 (2013)] ("The plain language of the statute is generally the best indicator of legislative intent ...."). Appellant's claim – that his ability to pay was not considered – lacks merit because the court was not obligated to consider ability to pay when it entered the order. _Id_.

_Commonwealth v. McCabe_, 230 A.3d 1199, 1207–1208 (Pa. Super. 2020), appeal granted on separate grounds, 238 A.3d 330 (Pa. 2020). Thus the Court did not err in ordering restitution this matter without determining the Defendant's ability to pay, and the Defendant is not entitled to appellate relief on this issue.

The Defendant's sixth allegation asserts that the Court erred in prohibiting the Defendant from testifying "as to his condition at the time of the incident." Rule 1925(b) Statement filed 7/7/2017 at ¶ 6 (citing 18 Pa. C.S.A. § 308; N.T. 10/16/2017 at 394-401). Although the Rule 1925(b) Statement does not specify the nature of the "condition" in question, this allegation of

16

error must be construed to assert that the Court erred in prohibiting the Defendant from testifying to his intoxication at the time of the incident. As a portion of the cited record reflects, the Commonwealth initially objected to defense counsel's query to the Defendant "What, if anything, in May of 2015 occurred?" N.T. 10/16/2021 at 393. During the resulting side bar, defense counsel indicated "I'm going to ask him what he did on [the day of the shooting]. I'm going to take him from the morning on. Are you OK with that?" *Id.* at 395. The Commonwealth questioned the relevance of such testimony, to which defense counsel responded that it would be relevant because "he was using drugs all day. ... It's showing that he didn't intend to go that Walmart to shoot up a Walmart." *Id.* The Commonwealth again argued that the testimony would be irrelevant, since voluntary intoxication is not a defense to the crimes charged. *Id.* at 396. Although Defense counsel acknowledged that voluntary intoxication was not a defense, counsel nevertheless countered that the Defendant should be permitted to testify about "that day and what led up to that day." *Id.* at 393-394, 398. Specifically, defense counsel indicated that, if permitted, the Defendant would testify as follows:

> That when his mother passed in 2015 is when he started using drugs. He continues to use these drugs. It's also around the time he actually observed people following him. He's going to talk about that these people followed him to North Carolina. So then he was still using, not the day of, but prior to the incident.

*Id.* at 399.[11] Although it was unclear to the Court whether the Defendant would testify that he was "using drugs all day," or that he "was still using, not the day of, but prior to the incident," such testimony would not be relevant in either case, and the Court sustained the Commonwealth's objection. *Id.* at 401. This decision was not an abuse of discretion.

---

[11] Defense counsel made it clear to the Court that the Defendant's testimony as to his "condition at the time of the incident" would not include testimony as to his mental health. N.T. 10/16/2021 at 394, 398.

17

As set forth previously, questions concerning the admissibility of evidence are committed to the discretion of the trial judge, whose rulings will not be disturbed on appeal absent an abuse of that discretion, which requires a finding of that that the ruling was the result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. *Johnson*, 615 Pa. at 372, 42 A.3d at 1027; *Scott*, 212 A.3d at 1107; *Handfield*, 34 A.3d at 207-208; *O'Brien*, 836 A.2d at 968. Additionally, it is undisputed that "[r]elevance is the threshold for admissibility of evidence; evidence that is not relevant is not admissible." *Commonwealth v. Leap*, 222 A.3d 386, 390 (Pa. Super. 2019), appeal denied, 233 A.3d 677 (Pa. 2020) (*citing Commonwealth v. Cook*, 597 Pa. 572, 952 A.2d 594, 612 (2008); Pa.R.E. 402).

Here, as we discussed when addressing the Defendant's first allegation of error, although the Defendant's trial strategy was to convince the jury that he did not intend to kill or injure anyone, and did not know that he was firing on police officers, testimony that he was intoxicated either before or on the day of the shootings would not have been relevant to prove lack of intent. As even the Defendant acknowledged, voluntary intoxication from alcohol or drugs would not constitute a defense to the charges against him, and evidence of such intoxication could not be introduced to negate intent, or reduce the degree of the attempted murder charge. 18 Pa.C.S.A. § 308; *Mason, supra.* As such, this Court did not abuse its discretion in sustaining the Commonwealth's objection to the Defendant testifying to his intoxicated condition leading up to or during the shooting, and the Defendant is not entitled to appellate relief on this claim.

In his seventh and eighth allegations of error, the Defendant asserts that the court erred in sustaining an objection to his testimony "concerning his drug use on the day in question," and

that "he had been under the influence." Rule 1925(b) Statement filed 7/7/2021 at ¶ 7-8 (*citing* N.T. 10/16/2017 at 411, 419).[12]

For the reasons discussed above with regard to the Defendant's first and sixth allegations of error, the Court did not abuse its discretion in sustaining the Commonwealth's objection, and the Defendant is not entitled to appellate relief on his seventh or eighth allegations of error.

The Defendant's ninth allegation of error reads as follows:

> The court's charge concerning attempted murder of a law enforcement officer included the factor that "the defendant had the specific intent to kill the listed person; that is, he had a fully formed intent and was conscience of his own intention". Yet the court concluded the defendant testifying as to his intoxicated state which would effect a specific intent to kill.

Rule 1925(b) Statement of Errors Complained of on Appeal filed 7/7/2021 at ¶ 9 (*citing* N.T. 10/16/2017 at 535).

The specific challenge intended by this allegation is unclear to the Court. The portion of the trial transcript cited by the Defendant pertains to instructions given to the jury in response to

---

[12] The record reveals the following exchange pertinent to the Defendant's seventh allegation of error:

| MS. SULLIMA: | ... How long did you stay in the back of Walmart? |
|---|---|
| DEFENDANT: | At that location? |
| MS. SULLIMA: | Yes. |
| DEFENDANT: | Approximately three to five minutes. |
| MS. SULLIMA: | And then what happened? |
| DEFENDANT: | At that point, that's when I finally said to myself, this is it. I had enough. Probably wasn't a good judgment call on my part. I was drinking all that morning and afternoon. We were using drugs earlier in the day. |
| MR. FERENTINO: | Objection. |
| THE COURT: | Sustained. The jury will disregard that last portion. |

N.T. 10/16/2017 at 411.

With regard to the Defendant's eighth allegation of error, the record shows that defense counsel asked the Defendant: "Scott, after you heard shots fired and you returned fire, what were you thinking?" *Id.* at 419. Without objection from the Commonwealth, the Defendant responded: "At that time, I really wasn't. I was so scared, I really wasn't thinking at all." *Id.* When he added "And being under the influence ...," however, the Commonwealth objected, and the Court sustained the objection. *Id.*

a question that arose during deliberations. We will thus construe the allegation as a challenge to those instructions. Pertinent that challenge, a review of the transcript reflects that during deliberations the jury asked to re-hear the definition of criminal attempt to commit murder of a law enforcement officer. N.T. 10/16/2017 at 534. The Court notified counsel, and indicated "I will provide the instruction as to the standard instruction I gave previously with regard to that offense." _Id_. The Court then re-instructed the jury, including directing that the jury could find the Defendant guilty of criminal attempt to commit murder of a law enforcement officer if it found four elements had been proven beyond a reasonable doubt, the second of which was that the Defendant shot at individuals with "the specific intent to kill the listed person; that is, he had a fully-formed intent to kill and was conscious of his own intention." _Id_. at 535.

Defense counsel did not object to the Court's stated intention to re-instruct the jury, did not object to the instruction actually given, and did not request that anything additional be added to the instruction. _Id_. at 536. Because the Defendant failed to object to the instruction, the current challenge to it has been waived for purposes of appeal. See _Commonwealth v. Gilliam_, 249 A.3d 257, 275 (Pa. Super. 2021), reargument denied May 19, 2021) (_citing Commonwealth v. Gooding_, 818 A.2d 546, 552 (Pa. Super. 2003) (failure to make a timely, specific objection to jury instruction waives challenge to content of the instruction on appeal)). Even if not waived, the allegation is without merit.

The Superior Court reviews challenges to jury instructions using an abuse of discretion Standard. _Commonwealth v. Leber_, 802 A.2d 648, 651 (Pa. Super. 2002). Trial courts have broad discretion in phrasing instructions, so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. _Commonwealth v. Williams_, 959 A.2d 1272, 1286 (Pa. Super. 2008) affirmed, 9 A.3d 613 (Pa. 2010). "[W]hen evaluating the propriety of jury

20

instructions, [the Superior Court] will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper." *Id.* An abuse discretion will not be found unless "the instruction under review contained fundamental error, misled, or confused the jury[,]" or the Defendant suffered prejudice. *Commonwealth v. McRae*, 5 A.3d 425, 430–431 (Pa. Super. 2010) (citation omitted), appeal denied, 23 A.3d 1045 (Pa. 2011).

Here, the record shows that the trial court's initial instructions on attempted murder of a law enforcement officer were supported by the evidence at trial and comported with the Pennsylvania Suggested Standard Jury Instructions, as well as the applicable statutory language. See N.T. 10/16/2017 at 510-512; Pennsylvania Suggested Standard Criminal Jury Instructions 3rd Edition, 2019 Supplement, Instructions 12.901(A)(1); 15.2507.[13] The re-instruction mirrored the original instruction. *Id.* at 534-536. Both the original instruction and the re-instruction clearly, adequately, and accurately presented the law to the jury for its consideration, and neither constituted an abuse of discretion on the part of the trial court which would entitle the Defendant to appellate relief on this issue.

The Defendant's final two allegations of error on appeal pertain to whether various sentences should merge. Specifically, the Defendant's tenth issue on appeal asserts that:

> The sentences for assault of a law enforcement officer, 18 Pa. C.S.A. § 2702.1(a) should merge for sentencing purposes with the criminal attempt to commit murder of a law enforcement officer 18 Pa. C.S.A. § 2507. The count involving criminal attempt to commit murder of a law enforcement officer and assault of a law enforcement officer contain the same elements. The attempt murder involved discharging a firearm which is an element of 18 Pa. C.S.A. § 2702.1.

Rule 1925(b) Statement of Errors Complained of on Appeal filed 7/7/2021 at ¶ 10. Similarly, the Defendant's eleventh issue asserts that "Counts 15 through 24 [REAP] should merge for sentencing purposes with the corresponding criminal attempts to commit murder, assault of law

---

[13] The Defendant did not object to the instructions as originally given.

enforcement officer and aggravated assault." Rule 1925(b) Statement of Errors Complained of on Appeal filed 7/7/2021 at ¶ 11.

As our Supreme Court has made clear, whether two offenses merge for sentencing is governed by Section 9765 of the Sentencing Code. _Commonwealth v. Edwards_, 256 A.3d 1130, 1136-1137 (Pa. 2021). That Section directs that:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765.

> Under the strict, elements-based test, "[t]he only way two crimes merge for sentencing is if all elements of [one] offense are included within the [elements of the other] offense." _Commonwealth v. Coppedge_, 984 A.2d 562, 564 (Pa. Super. 2009). In applying this test, we have said that regardless of whether the facts of a particular case establish the commission of two crimes, if an individual can commit one offense without committing the other, "the elements in general are different, and the legislature has said merger cannot apply.

_Commonwealth v. Crissman_, 195 A.3d 588, 593-594 (Pa. Super. 2018). "[T]here is no merger if each offense requires proof of an element the other does not." _Commonwealth v. Kiley_, 216 A.3d 1123, 1127 (Pa. Super. 2019) (_citing Commonwealth v. Quintua_, 56 A.3d 399, 401 (Pa. Super. 2012)).

Applying these principles to the Defendant's assertion that his sentences for assault of a law enforcement officer should merge with the sentences imposed for criminal attempt to commit murder of a law enforcement officer, it is clear that the Court did not err in sentencing the Defendant on those charges because the crimes did not arise from a single criminal act and all of the statutory elements of one offense are not included in the statutory elements of the other offense.

22

As the record reflects, the Defendant was charged with assault of a law enforcement officer and attempted murder of a law enforcement officer with regard to Officers Jude Allen, Dana Puchalski, Brian Bouton, Alan Gribble, and Joseph Sinavage, the five law enforcement officers named at Counts 1, 2, 3, 4, 5, 6, 7, 8, 10 and 11. Information filed 3/29/16; N.T. 12/14/2017 at 14-16. These crimes arose from a single criminal episode but involved separate, distinct criminal acts against each of the five officers.

As set forth in the Criminal Complaint and Affidavit of Probable Cause, the Defendant fired multiple shots at Officers Allen, Puchalski, Bouton, Gribble, and Sinavage over the course of events that unfolded between their arrival on the scene and their eventual apprehension of the Defendant. Criminal Complaint filed 10/17/2015; Affidavit of Probable Cause dated 10/15/2015.

Officer Jude Allen, the subject of Counts 1 and 11, testified that when he initially approached the Defendant and announced his identity as law enforcement, the Defendant fired multiple shots at him, forcing him to take cover. N.T. 10/16/2017 at 137-139. Then, despite being made aware of Officer Allen's identity, the Defendant again fired at Officer Allen as the officer changed positions in an attempt to close in on the Defendant's location. N.T. 10/16/2017 at 140-141. Finally, Officers Mitchel Rennick and Brian Bouton testified that the Defendant fired on Officer Allen when Officer Allen followed the Defendant as the Defendant attempted to evade capture. Id. at 109-110, 222-223, 230.

Officer Dana Puchalski was the subject of Counts 2 and 7. Officer Alan Gribble testified that he and Officer Puchalski were first fired upon by the Defendant as Officer Puchalski attempted to brief the newly arrived Officer Gribble. Id. at 260-261. Then, as the situation

23

evolved and the officers began to close in on the Defendant, he again opened fire on Officer Puchalski as she and the other officers approached him. _Id_. at 109-110, 148, 230.

Officer Brian Bouton, the subject of Counts 3 and 10, testified that the Defendant initially fired multiple shots at him as he drove his patrol unit toward the Defendant. _Id_. at 224-225. The first bullet to strike Officer Bouton's patrol unit hit the right side-view mirror. _Id_. The shots caused Officer Bouton to duck, and he thus avoided being shot in the head when a second bullet shattered the windshield and traveled through his headrest. _Id_. at 226-227, 228-229. The Defendant then fired additional bullets at Officer Bouton, which struck the grill and radiator of his patrol unit, disabling it. _Id_. at 227-229. Once the vehicle became inoperable, Officer Bouton exited it and joined Officers Allen, Puchalski and Gribble. _Id_. at 229-230. Then, as the situation progressed, Officer Bouton and the other officers began to move on foot from one cover position to another in attempt to subdue the Defendant, at which time the Defendant fired additional shots at Officer Bouton and the group. _Id_. at 229-230.

Officer Alan Gribble, the subject of Counts 4 and 8, testified that he was fired upon by the Defendant almost immediately upon Officer's Gribble's arrival on the scene. _Id_. at 257. As the situation developed, Officer Gribble ran to the police unit being driven by Officer Bouton and being used as cover by Officers Allen and Puchalski. _Id_. at 259-260. Once there, Officer Gribble had to duck behind the vehicle when the Defendant shot at him again. _Id_. at 260-261. Officers Gribble and Allen eventually ran from behind the vehicle to a brick wall, avoiding more fire from the Defendant as they did so. _Id_. at 263-264, 270. Additionally, Officer Bouton and Officer Joseph Sinavage testified that Officer Gribble was under fire as he and the other officers moved toward the Defendant. _Id_. at 211, 230.

24

Officer Joseph Sinavage was the subject of Counts 5 and 6. He testified that the Defendant initially fired at him as he drove toward the Defendant's position, using his police vehicle as cover for other officers. *Id.* at 203, 209. Officer Sinavage eventually exited the vehicle and pursued the Defendant on foot, at which time the Defendant fired on him again. *Id.* at 209.

It is thus apparent from the Criminal Information, Complaint, Affidavit of Probable Cause and trial testimony that the Commonwealth alleged criminal acts that constituted assault of law officer as distinct and delineated from the conduct that constituted attempted murder of law officer. That is, over the course of this incident the Defendant fired shots at each of the officers as they initially responded to the scene and established positions around the Defendant's location, and then fired additional shots at each of them as they subsequently moved around the scene in an attempt to subdue the Defendant. Because the Defendant fired on each officer more than once during the course of the standoff, the crimes did not arise from a single criminal act, the Defendant committed both assault of a law enforcement officer and attempted murder of a law enforcement officer with regard to each officer, the first portion of the Section 9765 merger test has not been met, and the convictions for those crimes should not merge for sentencing purposes. 42 Pa.C.S. § 9765; *Commonwealth v. Green*, 149 A.3d 43, 53-54 (Pa. Super. 2016) (An appellant should not receive a "volume discount" for his crimes); *Commonwealth v. Orie*, 88 A.3d 983, 1020 (Pa. Super. 2014) (citing *Commonwealth v. Robinson*, 931 A.2d 15, 24-25 (Pa. Super. 2007) (en banc) (If a defendant commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the defendant has committed more than one criminal act); *Commonwealth v. Wesley*, 860 A.2d 585 (Pa. Super. 2004) (holding offenses of aggravated assault and attempted murder did not merge for

25

sentencing, where defendant initially shot victim in back, then fired again, blowing off victim's finger, then shot victim five more times in the stomach and leg). *See also Commonwealth v. Jackson*, 597 MDA 2018, 2019 WL 4189316, at *1-2 (Pa. Super. September 4, 2019) (shot which inflicted a powder burn upon officer's face and subsequent shots fired at officer deemed multiple offenses supporting convictions for assault of a law enforcement officer and attempted murder, for which defendant was properly given consecutive sentences).[14]

Additionally, all of the statutory elements of assault of a law enforcement officer are not included in attempted murder of a law enforcement officer.

> [I]n order for the Commonwealth to establish a prima [facie] case for the offense of assault of law enforcement officer ... the Commonwealth is required to set forth evidence that: (1) the defendant attempted to cause, or intentionally or knowingly caused, bodily injury, (2) the victim was a law enforcement officer acting in the performance of his duty, (3) the defendant had knowledge the victim was a law enforcement officer, and (4) in attempting to cause, or intentionally or knowingly causing such bodily injury, the defendant discharged a firearm.

*Commonwealth v. Landis*, 48 A.3d 432, 445 (Pa. Super. 2012); 18 Pa. C.S.A. § 2702.1(a). A person commits attempted murder of a law enforcement officer when he takes a substantial step to "intentionally kill[] a law enforcement officer while in the performance of duty knowing the victim is a law enforcement officer." 18 Pa.C.S.A. § 901(a); 18 Pa.C.S.A. § 2507(a).

It is clear that in order to show that a defendant committed assault of a law enforcement officer, the Commonwealth must prove that the defendant discharged a firearm, which in not an element of attempted murder of a law enforcement officer. Additionally, in order to show that a defendant committed attempted murder of a law enforcement officer, the Commonwealth must

---

[14] Although *Jackson* is a non-precedential decision, pursuant to Pa.R.A.P. 126(b) non-precedential decisions filed after May 1, 2019 may be cited for their persuasive value. *Jackson* involved, in pertinent part, a defendant who fired multiple shots at a police officer and was subsequently sentenced to ten (10) to twenty (20) years' incarceration for attempted first-degree murder, and a consecutive twenty (20) to forty (40) years' incarceration for assault of law enforcement officer. *Jackson*, 597 MDA 2018, 2019 WL 4189316, at *1.

26

show that the defendant acted with a specific intent to kill, which is not an element of assault of a law enforcement officer. Thus, because all of the statutory elements of the one offense are not included in the statutory elements of the other offense, this Court did not err in imposing separate sentences for the convictions for assault of a law enforcement officer and criminal attempt to commit murder of a law enforcement officer. 42 Pa.C.S. § 9765; *Crissman*, 95 A.3d at 594; *Jackson*, 2019 WL 4189316, at *1-2 (holding that crimes of attempted murder and assault of a law enforcement officer each have an additional element not included in the other offense, and, therefore, do not merge for sentencing purposes) (*citing Commonwealth v. Johnson*, 874 A.2d 66, 71 (Pa. Super. 2005) (aggravated assault of a police officer did not merge with attempted murder)).

We turn next to the Defendant's multi-part assertion that that "Counts 15 through 24 [REAP] should merge for sentencing purposes with the corresponding criminal attempts to commit murder, assault of law enforcement officer and aggravated assault." Rule 1925(b) Statement of Errors Complained of on Appeal filed 7/7/2021 at ¶ 11.[15] Before addressing the merits of this allegation, we note that the record clearly reflects that the Defendant was found not guilty at Count 24 (REAP as to Alonzo Randall), thus there was no sentence imposed as to that count and no appellate relief is due with regard to the Defendant's allegation of error as to Count 24. We therefore limit our discussion to Counts 15 through 23.

---

[15] As set forth above, Counts 15, 16, 17, 18 and 23 charged the Defendant with REAP as to five police officers, who were also the subjects of counts charging attempted murder of law enforcement officer and assault of law enforcement officer. Counts 19 and 20 charged the Defendant with REAP as to two Walmart employees who were also the subjects of aggravated assault counts. Count 21 charged the Defendant with REAP as to a police officer who was also the subject of an assault of a law enforcement officer count. Count 22 charged the Defendant with REAP as to a police officer who was not the subject of any other counts. Count 24 charged the Defendant with REAP as to a Walmart patron.

The Defendant initially claims that his sentences for REAP imposed at Count 15 (Officer Bouton), Count 16 (Officer Puchalski), Count 17 (Officer Gribble), Count 18 (Officer Allen) and Count 23 (Officer Sinavage) should merge with the corresponding sentences for attempted murder of law enforcement officer imposed with regard to those officers at Counts 1 through 5.

As we discussed in detail with regard to the Defendant's 10th allegation of error, while the Defendant was convicted and sentenced for crimes that occurred during the same criminal episode, during that criminal episode he engaged in distinct acts that constituted separate crimes for which he was sentenced accordingly. As such, because the Defendant's sentences for REAP and attempted murder of law enforcement officer did not arise from a single criminal act, they do not merge for purposes of sentencing. See 42 Pa.C.S. § 9765; *Green*, supra; *Orie*, *supra*; *Wesley*, *supra*; *Jackson*, *supra*.

Additionally, the sentences for REAP and attempted murder of law enforcement officer do not merge because all of the statutory elements of one offense are not included in the statutory elements of the other offense, as would be required for merger under 42 Pa.C.S. § 9765. A conviction for REAP is supported by evidence that the defendant recklessly engaged in conduct which placed or may have placed another person in danger of death or serious bodily injury. 18 Pa.C.S. § 2705. Attempted murder of a law enforcement officer, however, is supported by evidence that the defendant took a substantial step to intentionally kill a law enforcement officer while in the performance of duty, knowing that the victim was a law enforcement officer. 18 Pa.C.S.A. § 901(a); 18 Pa.C.S.A. § 2507(a).

Thus an individual could recklessly place another person in danger of serious bodily injury without taking a substantial step to intentionally kill a law enforcement officer, which would support a conviction for REAP, but not for attempted murder of a law enforcement

28

officer. Conversely, unlike attempted murder of a law enforcement officer, REAP requires the element of "actual danger of death or serious bodily injury." *Commonwealth. v. Cianci*, 130 A.3d 780, 782 (Pa. Super. 2015). An individual could attempt to murder a law enforcement officer without placing the officer in actual danger, for example by discharging a firearm into an empty structure with intent to murder the officer mistakenly believed to be inside. Because it is possible to place another person in danger of serious bodily injury without attempting to murder a law enforcement officer (and vice versa), the Defendant's sentences for REAP and attempted murder of law enforcement officer do not merge. 42 Pa.C.S.A. § 9765; *Crissman*, *supra* ("[I]f an individual can commit one offense without committing the other, 'the elements in general are different, and the legislature has said merger cannot apply.'"); *Commonwealth v. Jones*, 166 A.3d 349, 353 (Pa. Super. 2017) (Where the elements of crimes are distinct the corresponding sentences do not merge).[16]

The Defendant additionally claims that his sentences for REAP imposed at Count 15 (Officer Bouton), Count 16 (Officer Puchalski), Count 17 (Officer Gribble), Count 18 (Officer

---

[16] In so finding, we recognize that the Pennsylvania Supreme Court has explained that "Section 9765 does not require an evaluation of the specific facts as applied to the elements. Had the General Assembly so required, it would have included language instructing us so. Instead, the Legislature's guidance dictates that our analysis begins and ends with the statutory elements of each offense." *Edwards*, 256 A.3d at 1137. In rejecting an "as-applied" approach, which would require the consideration of the case-specific facts underlying a conviction to identify whether the statutory elements of two offenses merge for sentencing purposes, *Edwards* indicated:

> [T]his approach artificially parses the statute, which mandates merger when "the crimes arise from a single criminal act *and all* of the statutory elements of one offense are included in the statutory elements of the other offense." 42 Pa.C.S. § 9765 (emphasis added). Rather, the "single criminal act" language is a distinct prong that must be satisfied in order to determine if merger is appropriate. Thus, even if the "single criminal act" prong may require an examination of the underlying facts of the charged offenses, such requirement does not control the second distinct prong of examining if *all* the elements of one offense are included in the other.

*Id*. (case citation omitted).

Allen) and Count 23 (Officer Sinavage) should merge with the corresponding sentences for assault of a law enforcement officer imposed with regard to those officers at Counts 6, 7, 8, 10, and 11.

Again, as discussed with regard to the Defendant's previous sentencing allegations, the Defendant was convicted and sentenced for distinct acts that constituted separate crimes. Because the Defendant's sentences for REAP and assault of a law enforcement officer did not arise from a single criminal act, they do not merge for purposes of sentencing. See 42 Pa.C.S. § 9765; _Green_, supra; _Orie_, _supra_; _Wesley_, _supra_; _Jackson_, _supra_.

Additionally, the sentences for REAP and assault of a law enforcement officer do not merge because all of the statutory elements of one offense are not included in the statutory elements of the other offense, as is required for merger under Section 9765. As set forth above, a conviction for REAP is supported by evidence that the defendant recklessly engaged in conduct which placed or may have placed another person in danger of death or serious bodily injury. 18 Pa.C.S. § 2705. Assault of a law enforcement officer, on the other hand, is supported by evidence that: (1) the defendant attempted to cause, or intentionally or knowingly caused, bodily injury, (2) the victim was a law enforcement officer acting in the performance of his duty, (3) the defendant had knowledge the victim was a law enforcement officer, and (4) in attempting to cause, or intentionally or knowingly causing such bodily injury, the defendant discharged a firearm. 18 Pa. C.S.A. § 2702.1(a); _Landis_, 48 A.3d at 445.

A person could recklessly engage in conduct, without using a firearm, which placed or may have placed a civilian in danger of death or serious bodily injury, thereby committing REAP but not assault of a law enforcement officer. Conversely, a person could cause bodily injury, but not serious bodily injury or death, to a law enforcement officer by discharging a weapon, thereby

30

committing assault of law enforcement officer but not REAP. As such, the sentence imposed upon the Defendant with for these crimes do not merge. 42 Pa.C.S.A. § 9765; _Crissman_, _supra_; _Jones_, _supra_.

We lastly address the Defendant's assertion that his sentence for REAP imposed at Count 19 with regard to Zachary McNeil should merge with his sentence for aggravated assault imposed at Count 12 with regard to McNeil. As the record reflects, McNeil was working at the Walmart on October 17, 2015, and observed the Defendant carrying a rifle outside the rear of the store. N.T. 10/16/17 at 79-81. McNeil testified that after he and the Defendant made eye contact through the window of a garage bay door, the Defendant immediately fired multiple shots into the door, forcing Mr. McNeil to take cover. _Id._ at 79-82.

Although the Defendant's actions in firing multiple shots at McNeil can be viewed as a single criminal act for purposes of Section 9765, the sentences for REAP and aggravated assault do not merge because all of the statutory elements of one offense are not included in the statutory elements of the other offense, as is required for merger under 42 Pa.C.S. § 9765.

As the Pennsylvania Supreme Court has explained:

> The elements of REAP and the specific elements of aggravated assault relevant herein, require different elements of proof. Aggravated assault, pursuant to the relevant subsection, requires a person to cause serious bodily injury or an attempt to cause such bodily injury under circumstances manifesting extreme indifference to the value of human life. 18 Pa.C.S. § 2702(a)(1). REAP, by contrast, requires a person to place another person in actual danger of death or serious bodily injury. 18 Pa.C.S. § 2705. As was explicated by the Superior Court in _Cianci_, it is possible to commit one crime without committing the other. _Cianci_, 130 A.3d at 782. Since all of the statutory elements of REAP are not contained in aggravated assault, they do not merge for sentencing purposes pursuant to Section 9765.

_Edwards_, 256 A.3d at 1138. _See also Cianci_, 130 A.3d at 782-783 (convictions for aggravated assault and REAP did not merge for sentencing purposes). Thus in the instant case the sentences

31

imposed upon the Defendant at Count 12 and 19 do not merge, and he is not entitled to appellate relief on this allegation of error.

For the foregoing reasons, the Defendant's convictions and judgment of sentence should be affirmed on appeal.

**END OF OPINION**